IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRYSTAL M. MATHIS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No._____ |
| v. | § | |
| | § | |
| **REDI CARPET, INC.,** | § | |
| | § | |
| Defendant. | § | (JURY TRIAL DEMANDED) |

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, CHRYSTAL M. MATHIS, filing her Original Complaint complaining of Defendant, REDI CARPET, INC., and in support thereof would show as follows:

## I.
## JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to (i) 42 U.S.C. §1981, (ii) Title VII of the Civil Rights Act of 1964, as amended, (iii) both prior statutes' anti-retaliation regulations and (iv) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff resides in Houston, Texas.

2. Plaintiff CHRYSTAL M. MATHIS resides in Houston, Texas. Plaintiff is African-American and is protected by 42 U.S.C. §1981 and Title VII. Plaintiff was at all relevant times an employee within the meaning of these applicable statutes.

3. Defendant, REDI CARPET, INC., operates in Texas. Defendant was at all times Plaintiff's employer within the meaning of these applicable statutes.

4. Defendant engaged in an industry affecting commerce and employed more than 200 regular employees.

5. The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

## VICARIOUS LIABILITY--RESPONDEAT SUPERIOR

6. Whenever in this complaint it is alleged that the REDI CARPET, INC. did any act or thing, it is meant that REDI CARPET, INC.'s supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of REDI CARPET, INC. or was done in the normal and routine course and scope of employment of REDI CARPET, INC.'s supervisors, agents, servants, employees, or representatives.

7. The acts of management including but not limited to Supervisor Michel Fortier, (non-African-American), were performed while in the employment of REDI CARPET, INC., to further REDI CARPET, INC.'s business, to accomplish the objective for which these supervisory employees were hired, and within the course and scope of that employment or within the authority delegated to these employees. FORTIER was given supervisory authority over MATHIS. As such, FORTIER was given complete day-to-day control over the work conditions, duties, and all other aspects of MATHIS' employment.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff Mathis filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about July 5, 2013. In that Charge, No. 460-2013-03030, and any amendments and/or attachments thereto, Mathis asserted that defendant discriminated against her because of her race and retaliated against her for complaining about such discrimination.

9. After investigating Plaintiff's Charge, the EEOC issued Plaintiff a Right to Sue Letter dated September 20. 2013. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

10. On or about June 18, 2012, Chrystal M. Mathis (African-American) was hired as a Credit Specialist for REDI CARPET, INC.

11. In or about May 2013, Michel Fortier (non-African-American) was hired by REDI CARPET, INC. as the Corporate Credit Manager.

12. Mathis spent considerable time training Fortier.

13. Fortier began harassing Mathis.

14. For instance, Fortier boasted to Mathis and other employees that he lived in the "ghetto" and every one of his neighbors was African-American all of whom were on welfare or on crack. Fortier further mentioned that he had a steel door so if anyone of his African-American neighbors came on his property he would shoot them.

15. Mathis reported these stereotypically offensive statements to Human Resources Administrator Imelda McKee. McKee's response was simply, "Are you serious?" She added that she would speak with Corporate Controller Erik Olsen.

16. Controller Olsen and Fortier were personal friends. Their relationship extended beyond the REDI CARPET workplace.

17. Other co-workers shared with Mathis that Fortier also told them other race-tainted stories or experiences that were expressly negative towards African-Americans.

18. Deborah Rideaux (African-American) was highly recommended for the Senior Credit Specialist position; Fortier readily rejected this promotion.

19. Fortier began having one-on-one meetings with Mathis. In these private meetings, Fortier would speak condescendingly towards Mathis. He would say, "You are doing a lousy job!" *And,* "It's my way or the door!" *And,* "I don't like you!"

20. Fortier did not meet with each member of his staff weekly.

21. In fact, Mathis witnessed Fortier encourage non-African-American employees who were not performing well. He would say, "It's okay." *And,* "You can do it!"

22. After a few of these weekly sessions, Mathis reported Fortier's racially-offensive conduct to Human Resources McKee. Mathis told McKee she was being "singled-out."

23. The behavior escalated.

24. Fortier exhibited violent tendencies, which greatly concerned Mathis. For instance, he threatened physical harm on the REDI CARPET customers. "If you told them you'd break their legs, they'd pay!"

25. When Fortier learned that Mathis reported him to Human Resources, he threatened Mathis as follows: "You going to HR is not doing anything. Erik and I are friends. He tells me everything."

26. Mathis reported Fortier's threat to Human Resources McKee. McKee's feckless response was "We have to talk to Michel. We'll talk to him again."

27. No positive improvements occurred. Quite the contrary.

28. In a separate meeting, Fortier told Mathis, "You're stupid. You are so ignorant. You lack common sense." When Fortier was told that his conduct was harsh, he double-downed. "You are in my office. I can talk to you however I want."

29. Mathis reported the aforementioned to Human Resources McKee. Mathis warned McKee, "The next time, I am going over y'all heads."

30. Fortier tried to embarrass Mathis in the presence of CEO Greg Waleke. When Mathis pointed out to both Fortier and CEO Waleke that many of Fortier's "concerns" were his own doing, and not Mathis', Fortier flew into a rage. He stormed over to Mathis' work area, invaded her personal space, pointed his fingers in her face and said, "You worry about your accounts and I'll worry about mine!"

31. Mathis reported this to Human Resources McKee.

32. On or about July 5, 2013 (Friday), Mathis filed a Charge of Discrimination with the EEOC.

33. Mathis tried to take time off of work in July 2013 using sick time that she had accumulated. Fortier denied her request for time off.

34. Instead, Fortier allowed another employee to borrow time from her 2014 allowance to use in 2013.

35. On July 11, 2013, REDI CARPET received a copy of Mathis' Charge of Discrimination.

36. Only then did REDI CARPET seemingly respond.

37. On July 12, 2013 (Friday), REDI CARPET opened up an investigation into Mathis' complaints against Fortier. The matter was investigated by Olsen and McKee.

38. On July 12, 2013, Human Resources McKee told Mathis that they had received her Charge of Discrimination from the EEOC. Controller Olsen added, "We already know what happened." He then gave Mathis a three-page report concluding "Upon interviewing the entire Credit Department, we found no evidence to substantiate Ms. Chrystal Mathis' complaints."

39. Becoming overwhelmed with how her Charge of Discrimination was being handled internally, Mathis took time off of work on or about July 12, 2013.

40. Mathis returned to work to a very cold and distant working environment. For example, the persons in higher management (e.g., CEO Greg Waleke, President and COO Jerry Hosko, and Brian Caress) greeted every employee in Mathis' vicinity and refused to speak with Mathis. Too, when management spoke to Mathis about work-related matters, they were equal parts curt and rude.

41. On or about August 13, 2013, Fortier disciplined Mathis. When Mathis requested proof of her alleged "deficiencies," Fortier failed to produce same.

42. On or about August 30, 2013, Fortier issued Mathis a performance evaluation that she did not agree was fair or accurate. He furthermore denied Mathis a salary increase.

43. From January 1, 2013 to September 13, 2013, Mathis was denied an individual performance bonus.

44. Upon information and belief, no other employees in the credit department were denied individual bonuses when bonuses were distributed from January 1, 2013 to September 13, 2013.

45. From January 1, 2013 to September 13, 2013, Mathis was denied a salary increase.

46. Upon information and belief, no other employees in the credit department were denied salary increases when increases were distributed from January 1, 2013 to September 13, 2013.

47. On or about September 9, 2013, Mathis was suspended without pay.

48. Upon information and belief, no other employees in the credit department were suspended from January 1, 2013 to September 13, 2013.

49. On or about September 13, 2013, Mathis was forced to resign under the emotional stress and strain of dealing with Fortier's harassment, discrimination and belligerent behavior and management's acceptance of same.

50. Plaintiff regularly worked "off the clock" where she worked beyond her normal 40 hours a week, but was not compensated for the additional time.

51. The effect of the practices complained of herein has been to deprive MATHIS of equal employment opportunities and otherwise adversely affect her status as an employee because of her race and opposition to discrimination.

## IV.
## CAUSES OF ACTION

**A.   RACE HARASSMENT & DISCRIMINATION PURSUANT TO 42 U.S.C. §1981 AND TITLE VII**

52.   Mathis repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

53.   Defendant, through its agents, supervisors, or employees violated Mathis' civil rights in violation of 42 U.S.C. §1981 and Title VII, by intentionally interfering with Mathis' performance of her employment because of her race.

54.   This intentional interference consisted of discrimination of a continuous nature.

55.   Defendant through its agents, supervisors, or employees discriminated against Mathis which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Mathis' employment.

56.   The above-described acts of Defendant caused Mathis substantial injury and damage.

**B.   RETALIATION PURSUANT TO 42 U.S.C. §1981 & TITLE VII**

57.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

58.   After complaining to management of maltreatment, Mathis was subsequently and repeatedly retaliated against her for complaining about such discrimination.

59.   As herein alleged, Defendant illegally retaliated against Mathis because she opposed discrimination and reported same.  Defendant had no legitimate business reasons for any of such acts.  Each act of retaliation is in violation of 42 U.S.C. §1981 and Title VII.  As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination and

retaliation against her, Mathis has suffered and will continue to suffer extreme and severe mental anguish and emotional distress. Mathis is thereby entitled to general and compensatory damages in amounts to be proven at trial.

60. The above-described acts on Defendant's part were undertaken in violation of 42 U.S.C. §1981 and Title VII, and proximately caused Mathis substantial injuries and damages.

C. **ASSAULT & BATTERY**

61. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

62. Defendant unlawfully committed assault and battery upon Mathis at the workplace. Defendant's agent Fortier, knowingly, intentionally and without Plaintiff's consent invaded Plaintiff's personal space, pointed in his fingers in her face, yelled violently and caused Plaintiff to fear an actual assault in the manner described above.

63. Defendant, through the abovementioned acts, intentionally and knowingly caused and allowed harmful interaction and the threat of physical contact with Mathis when Defendant knew or should have reasonably believed that Mathis found such to be offensive.

D. **FAIR LABOR STANDARDS ACT VIOLATION**

64. Plaintiff incorporates by reference all allegations contained in the paragraphs above as though fully set forth herein.

65. Plaintiff seeks to recover from Defendant unpaid overtime compensation, an additional equal amount as liquidated damages, and reasonable attorneys' fees.

66. At all times relevant to this Complaint, Plaintiff was an employee of Defendant engaged in performing duties for Defendant. The work performed by Plaintiff was directly

essential to Defendant's business.

67. During a significant portion of her employment, Plaintiff was required to work "off the clock" and perform additional job duties. Plaintiff was not paid overtime compensation for these hours worked in violation of FLSA.

68. At the times pertinent to this Complaint, Defendant failed to comply with the FLSA in that Plaintiff worked for Defendant in excess of the maximum hours provided by the FLSA, but provision was not made by Defendant and payments were not made to Plaintiff by Defendant at a rate of time and one half for the hours worked by Plaintiff in excess of the hours provided for in the statute.

69. Defendant willfully and intentionally refused to pay Plaintiff overtime wages as required by the FLSA.

## V.
## JURY DEMAND

70. Mathis requests that this action be heard before a jury.

## VI.
## DAMAGES

71. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affected Plaintiff in her occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental, consequential, economic, compensatory, and punitive damages in an amount to be proved at trial.

72. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

73. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living.

74. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of race and in retaliation.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at

      law, and equity;

c.    Compensatory damages for pain and mental suffering in the past and future;

d.    Unpaid overtime wages;

e.    An equal amount as liquidated damages;

f.    Punitive damages in an amount above the minimum jurisdictional limit of the Court;

g.    Reasonable attorney's fees, with conditional awards in the event of appeal;

h.    Pre-judgment interest at the highest rate permitted by law;

i.    Post-judgment interest from the judgment until paid at the highest rate permitted by law;

j.    Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

k.    Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,
Law Offices of Katrina Patrick

*/s/ Katrina Patrick*
Katrina Patrick
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
530 Lovett Street
Houston, Texas  77006
Telephone:  (713) 796-8218
Facsimile:  (713) 533-9607

**ATTORNEY FOR PLAINTIFF**
**CHRYSTAL MATHIS**